THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN C. BUTTERWORTH ET AL., PLAINTIFFS IN ERROR.

Argued May 5, 1927—Decided November 1, 1927.

Before GUMMERE, CHIEF JUSTICE, and Justices BLACK and LLOYD.

For the plaintiffs in error, *Rosenkrans & Rosenkrans* and *Samuel Untermyer* (of the New York bar).

For the defendant in error, *J. Vincent Barnill,* prosecutor of the pleas.

The opinion of the court was delivered by

BLACK, J. The defendants, eight in number, were indicted for holding an unlawful assembly. The trial before Judge Delaney, without a jury in the Passaic Special Sessions, re-sulted in their conviction. A writ of error was issued out of this court to review the judgments of conviction. Five assign-

ments of error were filed, the substance of which are that the defendants were convicted without evidence and should have been acquitted.

One of the defendants, Butterworth, was permitted to be asked by the state, on cross-examination, if he had a permit to hold a meeting at the City Hall Plaza and whether he had not been accustomed to obtain oral permits from the chief of police to hold meetings on street corners in the city of Paterson. These latter are not argued in the appellants' brief. The facts on which the convictions were based are set out in the bill of exceptions sent up with the writ of error. The defendants were arrested on October 6th, 1924, between seven and eight o'clock in the evening, at the City Hall Plaza, in Paterson. There was and had been since August 1st, 1924, an industrial strike among the workers in the silk mills of the city. A procession of persons marched along Market street in twos from the Market street headquarters of the Associated Silk Workers to the City Hall Plaza, a distance of a block and a half. They were followed by an increasing number of onlookers. The procession was led by two young women bearing an American flag, behind them walked the defendants John C. Butterworth, Roger N. Baldwin and Ferris Drecka. None of the other defendants were identified by witnesses for the state, as taking part in the procession.

When the procession approached the plaza, the number of persons in and about the plaza rapidly increased, until the same totaled, at the maximum number, fifteen hundred or two thousand. There were hurrahs and acclamations from among the crowd about the plaza, on the approach of the flag and the procession.

On September 26th, 1924, and continuously thereafter until and including October 6th, 1924, the strikers were prevented from holding their mass meetings in Turn Hall by order of the chief of police of the city.

A police officer read the Riot act or proclamation. Two or three police officers were brushed against by the procession. A young police officer, who had been on the police force three or four months, testified he was afraid until the original ten or twelve police officers were reinforced by such

additions as made their number about forty. Officer Love testified the crowd put him in fear. When the police officers had increased to about forty in number, they at once began to disperse the crowd, in the course of so doing, they met with opposition. Persons offering resistance were the defendants Basil Effsa, Bracco Natale, Kerrill Konzer, David Nitkin, George Cabbrizza and others.

The arrests of the defendants were followed by indictments by the Passaic county grand jury for an unlawful assembly. The indictment is of an offense at common law, declared to be a misdemeanor by section 215 of the Crimes act. *Comp. Stat., p.* 1811; *Pat. L., p.* 220, § 68. The sufficiency of the indictment has not been attacked. It was not necessary for the state to prove all the allegations therein set out. The purpose of the meeting, as set out in printed posters openly distributed and exhibited in the city of Paterson, three or four days immediately preceding the meeting, October 6th, 1924, was to protest against the alleged unlawful acts and supposed oppression of the police, in excluding the strikers from Turn Hall and in preventing the continuing of their daily meetings therein. Such is some of the dominant testimony contained in the record of the case. Tested by the legal rules applicable, were the convictions of the defendants justified?

The main, if not the only question, therefore, relates to the sufficiency of the evidence to support the charge laid in the indictment.

An unlawful assembly at common law has been defined in the reported cases and by text-book writers of recognized authority, thus:

Unlawful assembly in general—an unlawful assembly has been defined to be an assembly of three or more persons with intent either to commit a crime by open force or to carry out any common purpose, lawful or unlawful, in such a manner as to give firm and courageous persons in the neighborhood of the assembly reasonable grounds to apprehend a breach of the peace in consequence of it. 2 *Brill Cyc. Cr. L.* 1588, § 1007. Cited with approval in *Reg.* v. *Cunninghame,* 16 *Cox Cr. C.* 420, 427.

Professor Wharton in his 3 *Cr. L.* (11*th ed.*) 2050, § 1851, defines an unlawful assembly thus: Persons lawfully assembled may become an unlawful assembly, if they conduct themselves with a common purpose in such a manner as would have made their assembling unlawful if they had assembled in that manner for that purpose; and this has been held to be the case with disorder got up suddenly, though concertedly, at a town meeting, and at a social assembling for dancing. In determining the question of terror, it has been said that the jury are to consider whether natural and firm men, in charge of families, would have under the circumstances cause for anxiety; and in testing this it is necessary to take into account the hour at which the parties meet, the language used by them, and the acts done. An unlawful assembly does not in itself involve any overt act. If overt acts of violence are attempted the offense is a riot.

The Supreme Court of Wisconsin, in the case of *Bonneville* v. *State,* 53 *Wis.* 680, 684, speaking through Mr. Justice Orton, said, at common law an assembly became unlawful alone by the manner of it, as by such circumstances of terror as tended to endanger the public peace and excite fear, alarm and consternation among the people; and there need be no common purpose of such assembly, except such as might be implied by assembling in such manner, and which might be either lawful or unlawful.

Attended with circumstances calculated to excite alarm, an assembly is unlawful. *Reg.* v. *Neale,* 9 *Car. & P.* 431; 38 *Eng. Com. L.* 178. The temper of the meeting must be considered. *Reg.* v. *Vincent,* 9 *Car. & P.* 9, 93; 38 *Eng. Com. L.* 48, 118.

Other authorities to the same effect are 39 *Cyc.* 831, where the cases are collected. *Bish. Cr. L.* (9*th ed.*), 908, § 1256; *Black's L. Dict.* (2*d ed.*) 1187; *Hawk. P. C. C. I.,* § 334 (2); *Bouv. L. Dict.* (3*d ed.*) 3376; 4 *Words and Phrases* 1079.

From these authorities it is clear that an intention to commit a crime by force or an unlawful purpose are not essential ingredients of an unlawful assembly at common

law. This is an answer to the argument of the plaintiffs in error for a reversal of the judgments.

It is also clear that whether the circumstances, as disclosed by the testimony and the conduct of the defendants, were such as would frighten and alarm persons of reasonable firmness and courage, were questions of fact for a jury, and in this case for the judge sitting in the place of a jury. *Slater* v. *Wood, 9 Bosw. (N. Y.)* 15.

The testimony, a consideration of the background of the case and the subsequent events also clearly show that the advertised meeting in the City Hall Plaza, the most conspicuous place in the city, laid out a program in defiance of the constituted authorities. It was intended, in a spectacular fashion, to emphasize a disapproval of the action of the police. They of necessity knew this would provoke police hostility, and from the inflamed state of a public mind in the midst of a strike, nothing would be more likely than a consequent breach of the peace, if not by themselves, at least, by others in sympathy with them. That such an outcome was probable is inferrable from the meeting itself, under the circumstances, and that it was actually feared is evidenced by the testimony of the two police officers referred to.

The situation created by the defendants presented an analogy to a fire with obvious danger of a conflagration if not checked, and this tendency the principal defendants well knew.

Hence, it seems to us idle to say that the trial judge found these defendants guilty of an unlawful assembly without ample evidence to justify a conviction.

This leads to an affirmance of the judgments of the Court of Special Sessions of the county of Passaic, and such judgments are affirmed.